UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-CV-20596-FAM



JONATHAN MULLANE,
    Plaintiff,

v.

BARCLAYS BANK DELAWARE INC.,
    Defendant.
_____/

## PLAINTIFF'S VERIFIED MOTION FOR RECUSAL FOR CAUSE

    COMES NOW, Plaintiff Jonathan Mullane (hereinafter, "Plaintiff"), and respectfully requests that the Honorable Judge Federico Moreno (hereinafter, "Judge Moreno" or "the Court") recuse himself from the instant case pursuant to 28 U.S.C. § 455(a), 28 U.S.C. § 455(b)(1), 28 U.S.C. § 144, and Canon 2A of the Code of Conduct for United States Judges. In support hereof, Plaintiff proffers the following grounds and premises:

1. The disqualification of a Judge is not a reflection on the personal ethics, qualifications or abilities of the Judge. It is a motion directed only to the appropriateness of the Judge serving on a particular case. Because of the facts and circumstances involved in this case, it must be reassigned to another Judge.

2. Plaintiff, who is *pro se* in the instant action, is a second-year law student at the University of Miami School of Law. At the time the events herein occurred, Plaintiff was completing an internship at the United States Attorney's Office for the Southern District of Florida ("U.S. Attorney's Office").

3. On April 10, 2018, the Parties hereto in the above-styled action were convened for a hearing (hereinafter, "the Hearing") before the Court.

1

4. The merits of the instant action were not discussed at the subject Hearing. Instead, the Court made certain unfounded and scurrilous accusations against Plaintiff regarding extrajudicial matters, to wit, certain improper conduct which was alleged *sua sponte* by the Court.
5. In or around early March 2018, Plaintiff, went to the 8th floor of Wilkie D. Ferguson Jr. United States Courthouse.
6. In no way did Plaintiff make this trip on behalf of the U.S. Attorney's Office. In point of fact, as the weather was relatively warm on the day in question, Plaintiff wore: a T-shirt, sunglasses, yellow shorts, and flip-flops.
7. When Plaintiff arrived at the Courthouse, a security guard in the lobby of the building jokingly stated that Plaintiff looked like he was "dressed for the beach."
8. The singular purpose of Plaintiff's visit to the Courthouse was to inquire about obtaining the record from this Court in order to request a writ of mandamus from the 11th Circuit Court of Appeals.
9. Plaintiff posed this procedural question to a Courthouse employee at the Clerk of the Court's office.
10. Confused by Plaintiff's question, this employee unambiguously asked Plaintiff to speak with Judge Moreno's clerk on the 13th floor of the Courthouse.
11. Plaintiff did as he was told by the Courthouse employee, and proceeded to the 13th floor.
12. Seeking Judge Moreno's clerk in order to inquire about obtaining a copy of the record for a writ of mandamus, Plaintiff rang the office doorbell of the clerk—the person to whom Plaintiff was directed by the Clerk of the Court's office.
13. Plaintiff clearly identified himself to the clerk as Jonathan Mullane. Confusingly, the clerk continued to question Plaintiff about who he was, and demanded the name of his employer.
14. Confused as to the relevancy of the clerk's question, Plaintiff made the factually correct statement that he was employed with the U.S. Attorney's Office. Plaintiff then, in no uncertain terms, clearly stated to the clerk that the singular purpose of his inquiry was for a **personal** matter, and clarified that there was no connection whatsoever with the U.S. Attorney's Office.

15. Furthermore, Plaintiff immediately directed the clerk's attention to the caption of the instant case, which he—quite reasonably—assumed would clear up any confusion as to the foregoing.

16. Given Plaintiff's personal appearance at the time in question, and the simple fact that he was "dressed for the beach," no reasonable person could possibly conclude that a young man wearing yellow shorts and flip-flops was conducting official business on behalf of the U.S. Attorney's Office or the United States government.

17. In posing his purely procedural question regarding the Court's record for a writ of mandamus, Plaintiff clearly and unambiguously stated: (1) the docket number of the case; and (2) the caption thereof, which clearly states the names of the Parties hereto.

18. The caption of the instant action clearly states that neither the United States of America nor the U.S. Attorney's Office are parties to this case. Accordingly, no reasonable person could possibly conclude that there was any connection whatsoever to the government.

19. Plaintiff clearly and unambiguously stated to Judge Moreno's clerk that the Clerk of the Court on the 8th floor of the Courthouse had sent him to her.

20. Judge Moreno's clerk told Plaintiff that he had been misinformed. The clerk then suggested that Plaintiff go back to the Clerk of the Court's office, which would be able to assist him with his question.

21. After the above-mentioned interaction with Judge Moreno's clerk, which lasted approximately one minute, Plaintiff followed the clerk's advice and went back to the 8th floor in order to make further inquiries.

22. Plaintiff did not engage in any improper conduct whatsoever.

23. At the April 10, 2018, the Court made numerous extrajudicial accusations against Plaintiff on the record with respect to the above-mentioned incident. The incident in question was extrajudicial, and has no connection whatsoever to the facts or merits of the instant action.

24. *Inter alia,* the Court accused Plaintiff of "misrepresenting" himself, by allegedly stating that he was representing the U.S. Attorney's Office in the instant case.

25. Judge Moreno made the unfounded accusation that Plaintiff had entered his chambers to speak with him in person.

26. Judge Moreno made the unfounded accusation that Plaintiff represented himself to be an agent or representative of the U.S. Attorney's Office in this matter.

27. The Court appeared to have already arrived at its conclusions prior to the hearing in question.
28. The Court omitted the highly material fact of the conspicuous manner in which Plaintiff was dressed at the time in question.
29. When Plaintiff stated that he had been sent to speak with the clerk by the Clerk of the Court's Office, Judge Moreno made the unfounded and unsupported assertion that Plaintiff was "risking perjury."
30. *Arguendo,* assuming that the Court's erroneous theory is correct, there would have been no motive at all for Plaintiff to misrepresent himself to Judge Moreno's clerk. This is because: (1) any reasonable person—not to mention an educated clerk with a law degree—would immediately notice that the United States was not mentioned as a party to the instant case simply by looking at the caption of the case; and (2) if Plaintiff did indeed want to misrepresent himself, quite logically, he likely would have worn a suit to the Courthouse—not yellow shorts and flip-flops.
31. Accordingly, the Court's accusations are farfetched, irrational, and patently false.
32. Instead of making an objective and rational inquiry into the Court's accusations, the Court seemingly had already arrived at its own unfounded conclusions regarding Plaintiff and the incident in question.
33. Judge Moreno admitted on the record that he had engaged in an *ex parte* communication with U.S. Attorney Benjamin Greenberg regarding Plaintiff.
34. During the hearing in question, the Court's inappropriate questioning and statements included: (1) threats of holding Plaintiff in contempt of court; (2) threats of destroying the future legal career of a young second-year law student by reporting him to the Florida Bar; (3) threats of removing Plaintiff from his internship at the U.S. Attorney's Office by reporting him to people "up the chain;" (4) unnecessary and irrelevant *ad hominem* attacks on Plaintiff's character; (5) unfounded and unsupported accusations regarding Plaintiff's finances; and (6) comments regarding Plaintiff's dress and facial expressions.
35. The Court threatened Plaintiff by stating that he should be "worried" for his career instead of the instant case, and, on the record, suggested that he seek legal representation vis-à-vis the unfounded and baseless accusations of the Court.

36. The Court then proceeded to ridicule Plaintiff—a mere student—for a lack of understanding of the procedural implications of a writ of mandamus.
37. At the subject hearing, Judge Moreno unambiguously stated that he "didn't care" about Plaintiff's case, or about the claims raised therein.
38. The Court stated on the record that he did not know what the case was even about.
39. The Court's threats, accusations, and personal slights were malicious, disrespectful, irrelevant to the case at bar, and unsupported by any credible evidence or testimony. Furthermore, the foregoing were wholly devoid of any logical basis.
40. Plaintiff was denied the opportunity to cross-examine Judge Moreno's clerk. Furthermore, Judge Moreno declined Plaintiff's invitation for him to call the employee of the Clerk of the Court's office to testify.
41. Collectively, <u>all</u> of the foregoing acts, omissions, and statements made by the Court would clearly and convincingly prove to any reasonable person: (1) the appearance of clear bias; (2) the appearance of manifest prejudice against Plaintiff and his claims; and (3) the appearance of an utter lack of impartiality.
42. The foregoing bias, prejudice, and lack of impartiality were based on an <u>extrajudicial</u> matter, to wit, an interaction that Plaintiff allegedly had with Judge Moreno's clerk. As stated hereinabove, the interaction with his clerk was <u>not</u> during a hearing before the Court.
43. The Court's consultation with U.S. Attorney Benjamin Greenberg regarding Plaintiff was also extrajudicial and *ex parte.*
44. The appearance of bias and prejudice of the Court has absolutely nothing to do with any issues raised in the instant action, nor does it pertain in any way to the merits of this case. Indeed, at the hearing in question, not once were the merits of the case discussed, nor were any rulings made by the Court.
45. The appearance of bias and prejudice demonstrated by the Court were extreme and unprofessional, to the extent that no reasonable person could possibly expect to have a fair trial—which Plaintiff is entitled to under of the United States Constitution.
46. It is respectfully submitted that unfounded and unsupported accusations by the Court against a *pro se* litigant—a student and layperson—do not instill confidence in the judiciary by the public, and in fact cause significant harm to the public interest vis-à-vis the perceived partiality of the Court.

47. Two federal statutes, 28 U.S.C. §§ 455 and 144, govern recusal, and courts must construe them *in pari materia*. *Ray v. Equifax Information Servs. LLC,* 327 F. App'x 819, 824 (11th Cir. 2009).

48. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988).

49. Section 455(a) requires a judge to recuse himself "whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States,* 510 U.S. 540, 548 (1994) (citations omitted); *Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1329 (11th Cir. 2002).

50. "[W]hat matters is not the reality of bias or prejudice but its appearance." *Id.* at 548.

51. "Where, however, a judge makes specific remarks that indicate that he harbors a bias towards or against a litigant (or group of litigants) or a particular legal claim or theory, recusal is required under § 455." *Jenkins v. McCalla Raymer, LLC,* 492 F. App'x 968, 970 (11th Cir. 2012).

52. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988). Thus, "what matters is not the reality of bias or prejudice but its appearance." *Liteky,* 510 U.S. at 548.

53. Whether the Court actually is partial of course is not the test. Recusal is mandatory whenever "'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *United States v. Patti,* 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1524 (11th Cir. 1988)).

54. Moreover, because the purpose of the statute is to ensure public confidence in the judiciary, "any doubts must be resolved in favor of recusal." *Patti,* 337 F.3d at 1321; *see also, United States v. Kelly,* 888 F.2d 732, 745 (11th Cir. 1989) (same); *United States v. Alabama,* 828 F.2d 1532, 1540 (11th Cir. 1987) (same); *In re Boston's Children First,* 244 F.3d 164, 167 (1st Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (Mar. 2, 2001) ("'[I]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal'") (citations omitted).

6

55. Where "a judge makes specific remarks that indicate that he harbors a bias towards or against a litigant (or group of litigants) or a particular legal claim or theory, recusal is required under § 455." *Jenkins*, 492 F. App'x at 970 (citing *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995)) (emphasis supplied).

56. In this Circuit, "the test for determining whether a judge's impartiality might reasonably be questioned is an objective one and requires asking whether a disinterested observer fully informed of the facts would entertain a significant doubt as to the judge's impartiality." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla.*, 140 F.3d 898, 912 (11th Cir. 1998) (citing *Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 385 (11th Cir. 1991).

57. "The words [personal bias or prejudice] connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess [ . . . ], or because it is excessive in degree [ . . . . ]" *Liteky*, 510 U.S. at 550.

**WHEREFORE,** Plaintiff respectfully requests that the instant case be reassigned to a different district judge.

Respectfully submitted,

*[signature]*

Jonathan Mullane
*Pro se*
1100 S Miami Avenue
Unit 2806
Miami, FL 33130
Tel.: (617) 800-6925

DATED: 13th of April, 2018

## VERIFICATION

I, JONATHAN MULLANE, hereby declare under the pains and penalty of perjury of the laws of the United States that the facts as stated in the foregoing Verified Motion for Recusal for Cause are true and correct to the best of my knowledge. Pursuant to 28 U.S.C. § 1746, any affidavit requirement for this Motion is hereby satisfied.

*/s/ Jonathan Mullane*
JONATHAN MULLANE

## CERTIFICATE OF SERVICE

I, JONATHAN MULLANE, hereby certify that on this 13th day of April, 2018 I served a true copy of the foregoing Verified Motion for Recusal for Cause to Defendant via first-class mail to its counsel listed hereinbelow. I further certify that, notwithstanding a good faith effort, the Parties have been unable to resolve the matter.

Yolanda P. Strader
Carlton Fields Jorden Burt, P.A.
100 S.E. Second Street
Suite 4200
Miami, FL 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
ystrader@carltonfields.com

*/s/ Jonathan Mullane*
Jonathan Mullane
*Pro se*
1100 S Miami Avenue
Unit 2806
Miami, FL 33130
Tel.: (617) 800-6925
j.mullane@icloud.com

8

Jonathan Mullane<br>
1100 S Miami Ave., #2806, Miami, FL 33130 U.S.A. | +1 (617) 800-6925 | j.mullane@icloud.com

---

April 13, 2018

Southern District of Florida, Clerk's Office
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue
8th Floor
Miami, FL 33128

**RE:**     **CASE NO. 1:18-CV-20596-FAM**
             **MULLANE v. BARCLAYS BANK DELAWARE INC.**

Dear Clerk:

Please find enclosed herewith the following filing(s) in the above-mentioned action:

1. Plaintiff's Objection to the Magistrate's Order Denying Plaintiff's Motion for an Entry of Default; and
2. Plaintiff's Verified Motion for Recusal for Cause.

Thank you for your assistance and cooperation in this matter.

Yours faithfully,

Jonathan Mullane

Cc:     Yolanda P. Strader, Esq. (via first class mail)
         Carlton Fields Jorden Burt, P.A.
         100 S.E. Second Street
         Suite 4200
         Miami, FL 33131