```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
 3                 CASE NUMBER 18-20596-CV-MORENO
 4
     JONATHAN MULLANE,
 5
                    Plaintiff,                Courtroom 13-3
 6
        vs.                                   Miami, Florida
 7
     BARCLAYS BANK DELAWARE, INC.,            April 10, 2018
 8
                    Defendant.
 9
10                      MISCELLANEOUS HEARING
           BEFORE THE HONORABLE FEDERICO A. MORENO
11                 UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
     FOR THE PLAINTIFF:       JONATHAN MULLANE (PRO SE)
14                            1100 S. Miami Avenue
                              #2806
15                            Miami, Florida 33130
                                               617-800-6925
16
     FOR THE DEFENDANT:       YOLANDA P. STRADER, ESQ.
17                            Carlton Fields Jorden Burt, P.A.
                              100 Southeast Second Street
18                            Suite 4200
                              Miami, Florida 33131
19                                             305-539-7332
                                          Fax: 305-530-0055
20
21   REPORTED BY:            GILDA PASTOR-HERNANDEZ, RPR, FPR
                             Official United States Court Reporter
22                           Wilkie D. Ferguson Jr. US Courthouse
                             400 North Miami Avenue - Suite 13-3
23                           Miami, Florida  33128   305.523.5118
                             gphofficialreporter@gmail.com
24
25
```

# TABLE OF CONTENTS

Page

Reporter's Certificate ..................................... 29

# EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

1          (The following proceedings were held at 9:21 a.m.)

2               THE COURT:  Mullane versus Barclays Bank Delaware,

3     Civil Docket Case Number 18-20596.  The plaintiff.

4               MR. MULLANE:  Plaintiff.

5               THE COURT:  Come over here to the lectern.  Defendant.

6               MS. STRADER:  Yes, Your Honor, good morning.

7               THE COURT:  Grab that other microphone, so you're all

8     even.  There are two microphones.  No, defendant there.

9     Plaintiff at the lectern.  Who's here for the plaintiff?  Who's

10    here for the plaintiff?

11              MR. MULLANE:  I am, Your Honor.

12              THE COURT:  What is your name?

13              MR. MULLANE:  Jonathan Mullane.

14              THE COURT:  Okay.  You're representing yourself.

15              MR. MULLANE:  I am.

16              THE COURT:  You're a law student.

17              MR. MULLANE:  I am.

18              THE COURT:  Okay.  Who's here for the defense.

19              MS. STRADER:  Good morning, Your Honor.  Yolanda

20    Strader with Carlton Fields on behalf of the defendant, Barclays

21    Bank Delaware.

22              THE COURT:  Okay.  Let me tell you why I brought you

23    here.  I know you have a hearing before Magistrate Judge Louis

24    on this case which is a case, obviously since it's an '18 case,

25    that's fairly young.  It was removed on February 15th, less than

1    two months ago; and then Mr. Mullane, you filed an emergency

2    motion, you filed an Amended Complaint, you filed a Judicial

3    Notice.  You're playing lawyer, huh?  You filed a Motion for

4    Clerks Entry of Default, Motion for Judgment on the Pleadings,

5    Second Motion for Judicial Notice and then a Motion for Leave to

6    Appeal, which I don't understand.

7            MR. MULLANE:  Your Honor, I believe that was the

8    defendant who filed the request, the two requests for judicial

9    notice.

10           MS. STRADER:  That's correct, Your Honor.

11           THE COURT:  Don't talk to each other.  Talk to me.

12           You're smiling, and you have no idea what's going to

13   happen to you.  All right?  And that's why I'm here to tell you.

14   Because back on March 23rd you came to my chambers.  It was the

15   Friday before the Ultra concerts, so I let almost everyone go,

16   but my career law clerk, Mariela Martinez-Cid was there,

17   opposing counsel was not there and you came into chambers.

18           Are you an intern at the United States Attorney's

19   Office?

20           MR. MULLANE:  It's my last week, correct.

21           THE COURT:  It is your last week.  It will be your last

22   week and you'll never be able to work at the U.S. Attorney's

23   again, it would be my hope, because I spoke with Mr. Greenberg

24   at the United States Attorney's Office about your outrageous

25   conduct, and I wanted to give you a chance to explain.

1              You walked in through the hallway and you told my

2     career law clerk, Mariela Martinez-Cid, that you worked at the

3     U.S. Attorney's Office, right?

4              MR. MULLANE:  I did.

5              THE COURT:  Which is true but has nothing to do with

6     this case.

7              MR. MULLANE:  Correct.

8              THE COURT:  So you had an ex-parte conversation with my

9     clerk about this case, did you not?

10             MR. MULLANE:  She asked me --

11             THE COURT:  No, no.  She went out and sought you, or

12     you went into my chambers?

13             MR. MULLANE:  I went into your chambers because --

14             THE COURT:  You went into my chambers and identified

15     yourself as working for the United States Attorney's Office,

16     which is routinely done because a lot of people, assistant

17     United States attorneys come in.  They have to drop off things

18     like wiretap applications, all things that can legally be done

19     ex parte, but you have a civil case, which you, yourself, filed.

20     So you're the party, and you came into the judge's chambers

21     without your opponent, right?

22             MR. MULLANE:  Correct.

23             THE COURT:  And you identified yourself as working for

24     the U.S. Attorney's Office --

25             MR. MULLANE:  Not with respect --

1      THE COURT:  -- when this has nothing to do with the

2  United States Attorney, does it?

3      MR. MULLANE:  Correct.

4      THE COURT:  That's outrageous.  That is so wrong that

5  now the United States Attorney has to conduct an investigation

6  on this, because you identified yourself as working for the

7  United States Attorney on a personal case.

8      MR. MULLANE:  No, with respect -- I disagree.  I never

9  said that this was --

10     THE COURT:  Well, you're going to have to deal with

11 your supervisor, and you are going to have to deal with The

12 Florida Bar eventually for this outrageous conduct.  It is

13 absolutely outrageous and you have no idea what you did which

14 shows total lack of judgment.

15     MR. MULLANE:  Your Honor, with all due respect, I made

16 it very clear that this was a personal matter and this had

17 absolutely  nothing to do with --

18     THE COURT:  How dare you go into a judge's chambers

19 without your opponent and try to conduct ex-parte communication?

20 Why would you do that?

21     MR. MULLANE:  I went -- may I explain myself?

22     THE COURT:  You better explain yourself, because I may

23 have a rule to show cause why you shouldn't be held in contempt,

24 and then you're going to need a real lawyer.

25     MR. MULLANE:  I went to the 8th floor, to the Clerk's

1   Office.  I had a question and I was directed towards --

2          THE COURT:  Who directed you?

3          MR. MULLANE:  The gentleman who sits at the --

4          THE COURT:  He said go to the judge's chambers?

5          MR. MULLANE:  Yes.

6          THE COURT:  Ty, go downstairs to the Clerk's Office at

7   the 8th floor, find out who that man is.  You identify him.

8   Take Mr. Mullane.

9          MR. MULLANE:  No problem.

10          THE COURT:  I'll wait for you and bring in that person.

11          MR. MULLANE:  Not a problem.

12          THE COURT:  Would you know his name?

13          MR. MULLANE:  Not at all.

14          THE COURT:  What did he look like, black or white?

15          MR. MULLANE:  White.

16          THE COURT:  How old?

17          MR. MULLANE:  Middle aged.

18          THE COURT:  And what did you tell him?

19          MR. MULLANE:  I said that I had a specific question

20   about the entry of default, and he said you better speak with

21   the clerk or some particular person.  I don't understand the

22   difference between -- like I said, I'm a law student.  I don't

23   understand.  I didn't realize that there are all these separate

24   clerks for the Clerk of Court.

25          THE COURT:  And he said, go talk to the judge in

1  chambers?

2          MR. MULLANE:  Yes, Your Honor.

3          THE COURT:  He said, go talk to the judge in chambers?

4          MR. MULLANE:  No, he didn't --

5          THE COURT:  So I'm going to have a hearing.  If that

6  deputy clerk comes here and denies that, I'm going to find one

7  of you two committed perjury.  So now you tell me whether that

8  clerk of court said to you, go up.  I'm a middle-aged deputy

9  clerk and I always tell all the people who come to the Clerk's

10 Office, don't bother me, go talk to the judge, because I don't

11 believe that.  I'm going to give you the opportunity to

12 cross-examine him on that.

13         MR. MULLANE:  Your Honor, with all due respect --

14         THE COURT:  Skip the "all due respect," because you

15 have shown no respect by coming to chambers on a case and now

16 blaming someone in the Clerk's Office.

17         MR. MULLANE:  No.  Your Honor, he did not say go seek

18 Judge Moreno.  He said, go speak to Judge Moreno's clerk which

19 is who I was looking for.

20         THE COURT:  And you went into chambers because you

21 don't have a phone.  You don't have a phone.

22         MR. MULLANE:  He said go upstairs and --

23         THE COURT:  He told you go upstairs and go see the

24 judge?  You're telling me that?

25         MR. MULLANE:  No, I'm not telling you --

1    THE COURT:  Do you want me to place you under oath?

2    MR. MULLANE:  That's not what I said, Your Honor.

3    THE COURT:  Okay.

4    MR. MULLANE:  He said, go speak to Judge Moreno's

5    clerk, not Judge Moreno.

6    THE COURT:  Okay.  And you went and spoke to the clerk.

7    Do you see her over there, Mariela Martinez-Cid?  Okay.  You see

8    her?

9    MR. MULLANE:  Yes, and I also recall her --

10    THE COURT:  And what did you say to her?  She tells me

11    you said you wanted to file a petition for mandamus because I

12    haven't ruled quickly enough on something on a case that's two

13    months old which shows ignorance totally.  So you wanted her to

14    help you on a petition for mandamus which is why you filed a

15    motion in forma pauperis for appeal.  So now you're acting like

16    a prisoner pro se, not a law student.  Do you realize how stupid

17    that sounds?

18    MR. MULLANE:  If I may revisit the topic of the

19    discussion with your clerk as I was --

20    THE COURT:  She's here because I want to make sure she

21    hears what you have to say.

22    MR. MULLANE:  I have nothing to hide.  I have nothing

23    to hide.

24    THE COURT:  Do you realize what trouble you're in?  Do

25    you realize it or not?  I know you've had experience in

1    Massachusetts, but do you realize what's happening here or not?

2    Do you think you should seek your own lawyer or not?

3          I know you filed a motion in forma pauperis because

4    you're a pauper.  Are you a law student at the University of

5    Miami?

6          MR. MULLANE:  Yes, I am.

7          THE COURT:  You're on full tuition I take it.

8          MR. MULLANE:  My parents pay.

9          THE COURT:  Okay.  And you don't drive a car.

10         MR. MULLANE:  I do not drive a car.  I took the train.

11         THE COURT:  How did you get here today?

12         MR. MULLANE:  Train, Metrorail.

13         THE COURT:  Okay.  Do you pay rent?

14         MR. MULLANE:  My parents pay.

15         THE COURT:  Your parents pay.  And so you dare file --

16   Your parents pay, support you.  Where did you go to college?

17         MR. MULLANE:  I went to a public institution.  I

18   studied in Switzerland.

19         THE COURT:  Okay.  Well, that doesn't sound like a

20   pauper to me.

21         MR. MULLANE:  I paid a thousand dollars a year for my

22   tuition.

23         THE COURT:  Wonderful.  And so you want me to consider

24   you in forma pauperis like the prisoners who represent

25   themselves, who are in jail, who don't have a penny to their

1   name.  Do you realize how stupid that is, do you, in addition to

2   probably being dishonest because they don't even have a suit

3   like you have and they don't have the parents who pay for rent?

4           Are you understanding what's going on and what you've

5   done or not, or you're not realizing it?

6           MR. MULLANE:  With all due respect, I did not lie to

7   your clerk when she opened the door.

8           THE COURT:  I didn't say you lied.  I said, you've

9   committed something wrong by coming into the judge's chambers,

10  identifying yourself as working for the U.S. Attorney's Office

11  and then telling her it's your own private case.  And she asked

12  you to leave, did she not?

13          MR. MULLANE:  And I left.

14          THE COURT:  And you left.

15          MR. MULLANE:  And she referred me back to the --

16          THE COURT:  And did you tell your opponent about your

17  conversation with the judge's chambers about petition for

18  mandamus?

19          MR. MULLANE:  There was no --

20          THE COURT:  Did you converse three weeks ago with your

21  opponent about the fact that you came here to chambers and spoke

22  with the career law clerk of the judge on your case?

23          MR. MULLANE:  With all due respect --

24          THE COURT:  Did you do that --

25          MR. MULLANE:  No.

1    THE COURT:  -- with all due respect?

2    MR. MULLANE:  No.

3    THE COURT:  Which mean you had an ex-parte

4  communication with my clerk and you don't even notify your

5  opponent.  Do you realize how wrong that is?

6    What if your opponent had come in?  What would you say

7  about that?  Do you think that would have been fair?

8    MR. MULLANE:  If she was looking for directions to --

9    THE COURT:  Directions to appeal the judge?  You want

10  her to say, listen, how can I rule for you?  Well, let me have

11  my law clerk help you get a ruling.  Do you realize how

12  ridiculous that is?

13    MR. MULLANE:  That's not what I was seeking.

14    THE COURT:  Did you mention the word petition for

15  mandamus?

16    MR. MULLANE:  I said I --

17    THE COURT:  Did you mention those words?

18    MR. MULLANE:  I did.

19    THE COURT:  Okay.  Do you know what a mandamus is?

20    MR. MULLANE:  Vaguely.

21    THE COURT:  Then you shouldn't even be doing this,

22  because you're getting into trouble.  You don't even understand.

23    Mandamus is to mandate, it's to tell the Court of

24  Appeals that this judge needs to be told to do something,

25  because he's sitting on his butt and not doing anything which

1   can be done.  Some prisoners do it if a judge sits on a motion

2   for months or years.

3         This case is not even two months old.  So putting aside

4   the ridiculousness of wanting to petition for mandamus -- which

5   we would expect from a prisoner pro se, okay, but not from

6   someone who wants to be a lawyer, who may never be a lawyer

7   because of what you did in this case.  That's how serious this

8   is.

9         You go to tell the judge's law clerk, help me to see

10  how I can file a petition of mandamus because there's a default

11  that I want you to enter against the opponent who incidentally

12  has filed a Motion to Dismiss which, of course, means a judge

13  can't issue a default when there's a pending Motion to Dismiss,

14  but putting aside the substantive ridiculousness of this, is the

15  fact that you are not recognizing the misconduct that you have

16  committed by coming into chambers and thinking this is no big

17  deal.

18        Do you understand now why I'm having this hearing?  The

19  magistrate is going to have a hearing on whatever was pending.

20  This case has been around for how long?

21        MR. MULLANE:  Since the end of January I believe.

22        THE COURT:  Do you understand how ridiculous it is for

23  you to ask for a quick ruling on something?  Do you understand

24  that there's a pending Motion to Dismiss?

25        MR. MULLANE:  I do understand.

1          THE COURT:  Do you understand that in a case in

2    Massachusetts you supposedly accused someone of ex-parte

3    conduct?  Did you do that?

4          MR. MULLANE:  My attorney did, yes.

5          THE COURT:  Your attorney.  What's his name?

6          MR. MULLANE:  It's my father, Peter Mullane.

7          THE COURT:  Look at that, the father who's paying for

8    you to go to law school.  So that means you know what ex parte

9    is though you probably misunderstood in Massachusetts, and here,

10   you're committing it yourself.  All right?

11         So I told the United States Attorney.  He called me on

12   something else.  I was going to wait till after today, and I

13   told him what happened.  He's flabbergasted.  He said, you mean

14   someone went into your chambers and said he works for the United

15   States Attorney's Office as an intern and it was another case?

16   You can't even do that if you get a traffic ticket and say, oh,

17   I'm going to United States Attorney's Office.  That requires an

18   investigation.  Do you realize that?

19         MR. MULLANE:  I understand.

20         THE COURT:  Did you understand before?

21         MR. MULLANE:  I understand that I stated to your clerk

22   that I was there on a personal matter and that I was looking to

23   speak with someone.

24         THE COURT:  And you didn't mention the U.S. Attorney?

25         MR. MULLANE:  Excuse me?

```
 1              THE COURT:  Did you mention the U.S. Attorney?
 2              MR. MULLANE:  She had asked me --
 3              THE COURT:  Did you mention the U.S. Attorney?
 4              MR. MULLANE:  Yes, I did mention the words U.S.
 5    Attorney.
 6              THE COURT:  You cannot do that.  That's why you're in
 7    trouble.
 8              Forget about the default, forget about the petition for
 9    mandamus, forget about this case, forget about what you're
10    asking for.  I'm not getting into that, because it's a case that
11    is a month and a half old, two months, forget about that.  And
12    by the way, I doubt if there are too many judges in the country
13    who rule faster than I do, but you wouldn't know because you're,
14    what, a first-year law student.  So that doesn't matter to me.
15    It's kind of a joke.  Sometimes I rule too quickly but forget
16    about that.
17              It's the fact that you used the privilege that you have
18    being an intern or extern, whatever the word is, to work at the
19    United States Attorney's Office, that's the biggest no-no that
20    you can do.  Do you realize that or not?
21              MR. MULLANE:  I realize that I answered your clerk's
22    question honestly.
23              THE COURT:  Because she said, who are you.
24              MR. MULLANE:  Yes and I said --
25              THE COURT:  And you should have said, I'm the plaintiff
```

1  in this case.

2        MR. MULLANE:  I said, I don't understand your question.

3  That's what I originally stated.

4        THE COURT:  And then what happened?

5        MR. MULLANE:  Then she said, but who do you work for?

6  And I said -- I'm still very confused, and she insisted; who are

7  you with, who are you with?  And I said, well, I work for the

8  U.S. Attorney --

9        THE COURT:  That's the mistake.

10       MR. MULLANE:  -- but I'm here on a personal matter.

11       THE COURT:  What does the United States Attorney have

12  to do with this case?

13       MR. MULLANE:  I have no idea.  That's why I kept asking

14  her, I don't understand your question.

15       THE COURT:  Instead of backpedaling like you are now,

16  you should have said, I'm the plaintiff in this case,

17  18-20596-Civil, because that's who you are.

18       MR. MULLANE:  Correct.

19       THE COURT:  That's why you were coming to chambers.

20       MR. MULLANE:  Correct, and I stated that.

21       THE COURT:  And she would have said, I can't let you in

22  because I wouldn't let the other side in, even if she is a

23  Harvard law school graduate with 35 years experience.

24        I don't know if you went to Harvard or not, but you

25  definitely do not have 35 years experience --

1          MS. STRADER:  No, Your Honor, that's correct.

2          THE COURT:  -- based on my observation.

3          It has nothing to do with the U.S. Attorney.

4          MR. MULLANE:  Correct.

5          THE COURT:  You cannot mention the U.S. Attorney when a

6   cop stops you on a red light.  Do you understand that or not, or

7   not?

8          MR. MULLANE:  I now understand.

9          THE COURT:  Well, you should have understood before.

10  How old are you?

11         MR. MULLANE:  I'm 29.

12         THE COURT:  You should understand at 29 years old that

13  you cannot mention the U.S. Attorney in order to get some

14  advantage --

15         MR. MULLANE:  I wasn't trying --

16         THE COURT:  -- even in response to a question.

17         MR. MULLANE:  I was not trying to get any advantage.

18         THE COURT:  You would not have been allowed in.  Do you

19  understand that?

20         MR. MULLANE:  I did not know that, Your Honor.

21         THE COURT:  How can you not know that when your father

22  is a lawyer, filed something accusing someone of ex-parte

23  communication in your case?  How can you not know that, which I

24  understand was a ridiculous accusation in a closed case

25  involving a clerk and a judge?  But putting that aside, how can

1   you claim ignorance like if you were a high school dropout in a

2   prison like many pro se defendants?  You're not that kind of a

3   pro se, right?  Are you?

4            MR. MULLANE:  No, Your Honor.

5            THE COURT:  What do you want to say?

6            MR. MULLANE:  I apologize for the misunderstanding.  I

7   made no attempt to --

8            THE COURT:  It's not a misunderstanding.  It's gross

9   and absolute misconduct and what you're going to have to do now

10  is -- who's your supervisor?  Michelle Alvarez?  You don't even

11  have a supervisor?

12           MR. MULLANE:  Alison Lehr.

13           THE COURT:  Okay.  That's who you've got to see.  It's

14  going all the way up the chain and you're going to have to

15  explain yourself and it's up to them to decide what they should

16  do to you.

17           Do you understand how serious this is?  Do you?  You're

18  shaking your head.

19           MR. MULLANE:  I now understand, yes.

20           THE COURT:  How could you not understand before?

21           MR. MULLANE:  Because the simple --

22           THE COURT:  Do you think everybody walks into a judge's

23  chambers in Federal court?  You know most judges have that

24  outside door locked.  I have it open to make it easier, but this

25  door is locked, and the reason it's locked is because we don't

 1  just have people coming in and saying, hey, let me talk to you

 2  about my case, so you can talk to the judge.

 3          Do you realize how wrong that is, to go into a judge's

 4  chambers by yourself and talk about your case?

 5          MR. MULLANE:  I wasn't trying to enter your chambers,

 6  Your Honor.  I was trying to speak with your --

 7          THE COURT:  Oh, what, someone forced you?

 8          MR. MULLANE:  Your Honor, I was trying to speak with

 9  your clerk to whom I was directed by the person on the 8th

10  floor.

11          THE COURT:  Okay.  Do you want me to bring in that

12  person on the 8th floor, so that the hole gets dug deeper?

13          MR. MULLANE:  No problem.  I've said nothing -- I've

14  said everything as it happened.

15          THE COURT:  Do you want me to bring him up?

16          MR. MULLANE:  No problem.  I've done --

17          THE COURT:  Because it may cost him the job if he told

18  someone, go to the judge's chambers, that's what I tell every

19  pro se litigant.

20          MR. MULLANE:  That's what I was told.  I have no reason

21  to lie.

22          THE COURT:  He told you to go to chambers?

23          MR. MULLANE:  Your Honor, I have no reason to lie.

24          THE COURT:  You do have a reason to lie.

25          MR. MULLANE:  What is that?

1        THE COURT:  The reason to lie -- right now you should

2   be scared.  That's when most people start lying.  You're

3   obviously not scared.  If you're not scared, it means you're not

4   recognizing how wrong you've been.  If you don't recognize how

5   wrong you've been, it shows a total lack of judgment which means

6   you probably cannot be a lawyer, let alone someone working at

7   the U.S. Attorney's Office.  Do you understand that?

8        MR. MULLANE:  I understand.

9        THE COURT:  And you're shifting the blame.  Well, I

10  only said I was working at the U.S. Attorney's Office because

11  your clerk, in order to let me in, said, who are you?  Instead

12  of saying, I'm the plaintiff, because see, if you had said, I'm

13  the plaintiff, what do you think she would have said to you?

14       MR. MULLANE:  I have no idea, Your Honor.

15       THE COURT:  By now, 9:40, you still have no idea --

16       MR. MULLANE:  No, I understand.

17       THE COURT:  -- of what she would have told you?  What

18  do you think she would have told you?

19       MR. MULLANE:  Based on this hearing, I presume she

20  would have directed me to someone else with my question.

21       THE COURT:  She would have said, file whatever you want

22  in writing with notice to the other side, which, by the way,

23  considering this case is two months old and we've got Docket

24  Entry 31, you know how to do that, because you have filed stuff.

25  That way you don't have a communication with a judge without the

 1  other side, just like I cannot have a communication with your

 2  opponent without you.  How would that make you feel if I had a

 3  communication with your opponent without you?  Tell me how that

 4  would make you feel.

 5           MR. MULLANE:  If it was regarding substantive issues of

 6  the case, it would make me very unhappy.

 7           THE COURT:  You're right.  It would have been wrong,

 8  right?

 9           MR. MULLANE:  If it was regarding --

10           THE COURT:  And what else would you be talking to a

11  clerk about?

12           MR. MULLANE:  If it was regarding what time a hearing

13  takes place.

14           THE COURT:  Oh, you mean, the hearings weren't notified

15  in writing?  Things are not done in writing in Federal court?

16           MR. MULLANE:  With all due respect, Your Honor --

17           THE COURT:  Everything is with due respect.

18           MR. MULLANE:  With all due respect, Your Honor, you

19  called my personal phone yesterday, you left a voicemail on my

20  phone.

21           THE COURT:  Do you know why?

22           MR. MULLANE:  Yes, I do know why --

23           THE COURT:  Because as a pro se plaintiff, you do not

24  get the automatic email notices --

25           MR. MULLANE:  I understand.

1       THE COURT:  -- and thus, because you do not get the

2  email notices and I realized, you know what, he doesn't even

3  have notice of this, I did call to let you know and then I had

4  my other clerk in charge of this case email you --

5       MR. MULLANE:  And I appreciate it.

6       THE COURT:  -- in writing.

7       It wasn't to talk to you about the case.  It was to

8  notify you and that's the judge notifying you.  You do not call

9  judges, you do not call law clerks, you do everything in

10 writing.  You don't even go to the 8th floor, because the person

11 in the 8th floor cannot help you.

12      MR. MULLANE:  I see.  I was not aware of that.

13      THE COURT:  How can you not be aware of it?  Okay?  And

14 if you're not aware of it, talk to a lawyer, because you know

15 the old saying?  "He who represents himself" -- can you fill in

16 the rest? -- "has a fool for a client."  Have you ever heard of

17 that?  And that's what you have.

18      Now, normally, the people who want to represent

19 themselves are thrice convicted prisoners who have no money and

20 who have little hope of winning.  Those are usually the people

21 who do that, not people who have a lifetime ahead of themselves,

22 and now you're going to have to fix this mess for yourself,

23 forget about this case.  I don't even know or care what the case

24 is about, because it's one of 202 cases that I have which is the

25 second lowest caseload, I just wanted to tell you.  We all get

1  the same cases, but some of us work harder and faster, okay?

2  But I don't care about this case, and you know what my piece of

3  advice to you is?  You shouldn't care about this case either.

4  What should you care about?

5           MR. MULLANE:  My career.

6           THE COURT:  You got it and your reputation.  All of a

7  sudden, that should be more important than playing lawyer

8  because when you play lawyer, you make mistakes.  If you're pro

9  se, even a fellow who's out, he doesn't care, he's not paying

10  for a lawyer.  He has nothing and we have to bend over backwards

11  for pro se people.  We have to say, well, no, don't you

12  understand and I would have taken a different -- we wouldn't

13  even be having a hearing.

14           I would have let my new magistrate judge who's much

15  more patient than I am, much nicer, and she's new at the job, so

16  she's looking forward to resolving all these issues and she will

17  do that.  Okay?  But you, you've got a career.  You're a what,

18  first-year law student?

19           MR. MULLANE:  Second year, Your Honor.

20           THE COURT:  Second-year law student.  So you're in such

21  a heap of trouble now with the U.S. Attorney, with me, with the

22  law school's internship program.  It's just a big mess that

23  you've made.  Do you understand that?

24           MR. MULLANE:  I understand, Your Honor.

25           THE COURT:  I'm not going to hold you in contempt and

1    I'm not going to do anything on this case until the magistrate

2    and I'm not telling you to dismiss it, though that would be a

3    good idea from a personal standpoint, but for me, it's a nothing

4    case for me.  Do you understand that?

5         What's the case about?  I don't even know.  What's the

6    case about?

7         MR. MULLANE:  My credit score.

8         THE COURT:  Look at that.  Can you imagine?  Your

9    credit score.  You need your honesty score, your reputation,

10   that is much more important than your credit score.  Don't you

11   understand that, and that's what you need to reflect on.

12        Now, I've told Judge Louis that you all were going to

13   be late, so you don't have to worry about it.  I scheduled this

14   at 9:00.  I wasn't even going to come in today until later;

15   because you had a 9:30 hearing, that's why I scheduled this

16   which is why I called your number and left a message --

17        MR. MULLANE:  Thank you.

18        THE COURT:  -- myself.

19        Okay?  I would never talk about the case with anybody,

20   but see, once you come in and use the word like mandamus, you're

21   talking substance.  Do you understand?

22        MR. MULLANE:  My question pertained to filing.

23        THE COURT:  And what answer can you expect?

24        MR. MULLANE:  I was told to go down to the 8th floor

25   and that's what I did.

1          THE COURT:  Later, after you left chambers, you went

2    down to the 8th floor.

3          MR. MULLANE:  Yes.

4          THE COURT:  And what did you do?

5          MR. MULLANE:  And the gentleman will confirm that.

6          THE COURT:  No, I believe you.

7          MR. MULLANE:  And then he called his supervisor.

8          THE COURT:  Imagine all of that calling, to do what?

9          MR. MULLANE:  Very nice African-American woman came and

10   she spoke with me about my question and then the following

11   day --

12         THE COURT:  What did she say?

13         MR. MULLANE:  She said, I'll have to give you a phone

14   call, and I said, okay, thank you.

15         THE COURT:  They can't give you legal advice.

16         MR. MULLANE:  It wasn't -- okay.

17         THE COURT:  What was the question?

18         MR. MULLANE:  I can't remember exactly.  It was about

19   how to file the mandamus request or something.

20         THE COURT:  Look at that.  Mandamus is Latin.

21         MR. MULLANE:  Not to write it.

22         THE COURT:  You know, the people in the Clerk's Office

23   are magnificent.  They're wonderful people.  Latin is not their

24   forte, because we don't teach Latin anymore, which is probably a

25   good thing.  We've got enough problems learning English and

1   perhaps other languages, let alone Latin.  Okay?

2          If you don't know what you're doing, a clerk is not

3   supposed to help you.  That's why you need a lawyer to file a

4   case.  If you don't have the money to hire a lawyer, then maybe

5   you shouldn't be spending so much of your parent's money on law

6   school.  If it's a good enough case to file, you should get a

7   lawyer.  If it's not a good enough case, you shouldn't be

8   practicing law without a license.  Because that's also, though

9   it's your own case, also dumb, isn't it?  Because I don't know

10  what other judges would have done with this.  Some probably

11  would have been harsher in tone than I am, some would have been

12  mellower, to tell you the truth, but I just want you to

13  recognize.

14          MR. MULLANE:  I do and I apologize, Your Honor.

15          THE COURT:  Do you really?  Do you really?  I'm not

16  sure.

17          MR. MULLANE:  Yes.

18          THE COURT:  Because even in response to the email, you

19  even put an exclamation mark.  You were excited to come here to

20  court and I didn't want you to be excited.  I want you to be

21  remorseful and understand what's going on.

22          I don't want to hear anything from defense counsel.  I

23  just couldn't have a conversation with your opponent without

24  you, and I'll let you all decide what you want to do.  So you

25  can walk over now.  I'll call Judge Louis.  You can walk over

1   now.

2           Do you know where her chambers are and her courtroom?

3           MR. MULLANE:  I do not.

4           THE COURT:  It's in the penthouse of the Atkins

5   building I think.  It's Judge Atkins' -- Right, is that where it

6   is?

7           MS. STRADER:  Your Honor, I'm happy to walk over with

8   him to make sure.

9           THE COURT:  Walk over with him.  You can talk about

10  this case if you want.  You can do whatever you want about the

11  case.  I'm not telling you what to do with the case, and now,

12  see, what's going to happen is the U.S. Attorney is going to ask

13  my career law clerk what happened through somebody else and

14  she's going to be -- you know, I don't think there's any dispute

15  of what happened in chambers, but then what you have to do is --

16  you're going to go to the U.S. Attorney's Office today?

17          MR. MULLANE:  Most likely, yes, this afternoon.

18          THE COURT:  Oh, absolutely you should, and you should

19  come in and talk and say, this is what happened to me in front

20  of Judge Moreno today.  I really screwed up.  Let me tell you

21  what happened.  All right.  Because if you don't do that, it's

22  going to be worse, but you do whatever you want.

23          Where did you go to college?

24          MR. MULLANE:  In Europe.

25          THE COURT:  In Europe.  In Europe they do everything in

1  writing.  You don't even go to court most of the time.

2          MR. MULLANE:  I did not study law in Europe, Your

3  Honor.

4          THE COURT:  I know, but I'm just telling you so you

5  learn something from today, and in Federal court, we do almost

6  everything in writing.  In State court, people walk in and out

7  of judges' chambers, and perhaps when people get too loose,

8  that's why some judges even went to jail in my days when I was a

9  State judge.

10         So we're very careful about not having -- and even

11 though they're elected officials, and they know the lawyers on

12 both sides, it's always uncomfortable.  We have to be friendly

13 to both sides, especially a State judge because they run for

14 office but never discuss the case.  Petition for mandamus is

15 talking about the case.  Default is talking about the case, and

16 that's why you can't even cross that line --

17         MR. MULLANE:  I see.

18         THE COURT:  -- even in State court if you graduate from

19 law school.  Do you understand?

20         MR. MULLANE:  (Nodding.)

21         THE COURT:  Do everything in writing and always

22 conferring with your opponent, and then even if you mess up

23 because you're young and inexperienced, at least there won't be

24 any bad faith attributed.  It will just be a dumb thing to do as

25 opposed to a dishonest thing.

1    MR. MULLANE:  Yes, Your Honor.

2    THE COURT:  Okay.  This is a sermon.

3    MR. MULLANE:  Yes.

4    THE COURT:  You can count it for Saturday or Sunday,

5  whatever you practice.

6    Okay.  Go ahead see Judge Louis.  Good luck to you.

7  You'll need it.

8    MS. STRADER:  Thank you, Your Honor.

9    MR. MULLANE:  Thank you.

10    THE COURT:  Sorry I made you come.

11    (The hearing was concluded at 9:53 a.m.)

12

13              C E R T I F I C A T E

14    I hereby certify that the foregoing is an accurate

15  transcription of proceedings in the above-entitled matter.

16

17  _____          _____
       04-13-18
         DATE                  GILDA PASTOR-HERNANDEZ, RPR, FPR
18                             Official United States Court Reporter
                               Wilkie D. Ferguson Jr. U.S. Courthouse
19                             400 North Miami Avenue, Suite 13-3
                               Miami, Florida  33128     305.523.5118
20                             gphofficialreporter@gmail.com

21

22

23

24

25